# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ANDREW MARQUEZ,

                Plaintiff,

     v.

TIMOTHY SHERMAN, *et al.,*

                Defendants.

Case No. 3:25-cv-00370-SLG

## SCREENING ORDER

On December 29, 2025, self-represented prisoner Andrew Marquez ("Plaintiff") filed a civil complaint, an application to proceed without prepaying the filing fee,[1] a motion to appoint counsel, a motion for a preliminary injunction, a declaration, and an affidavit.[2] On January 27, 2026, Plaintiff filed a motion to file an amended complaint with an attached proposed First Amended Complaint ("FAC"), another motion for a preliminary injunction, a declaration, and an affidavit.[3] Then, on March 11, 2026, Plaintiff filed a Motion for Leave to File a Second Amended Complaint with a proposed Second Amended Complaint ("SAC"), a declaration, and records from the Department of Corrections ("DOC").[4]

---

[1] Although Plaintiff did not include a statement from his prisoner's trust account with his application, the Court notes that he did file an account statement in his other pending case. *See* Case No. 3:25-cv-00121-SLG, Docket 2-1.

[2] Dockets 1-6.

[3] Dockets 8-11.

[4] Docket 15.

Upon review, Plaintiff's motion at Docket 12 is GRANTED insofar as Plaintiff's SAC at Docket 12-2 is ACCEPTED as filed. However, the Court does not adopt the language included in Plaintiff's proposed order because the SAC fails to state a plausible claim.[5] The Court has now screened Plaintiff's SAC in accordance with 28 U.S.C. §§ 1915(e) and 1915A. Because an amended complaint replaces the prior complaint in its entirety,[6] the Court only considers the information provided in the amended complaint at Docket 12-2.

## I. This action is deficient because Plaintiff did not include a statement from his prison trust account for the past six months.

To properly commence a civil action, a prisoner litigant must file a complaint, a civil cover sheet, and either pay the filing fee of $405.00, or file a completed application to waive prepayment of the filing fee on the District of Alaska's Form PS10.[7] Prisoner litigants must also include a statement from their prison trust account for the past six months.[8] Federal law only allows prisoners to waive *prepayment* of the fees associated with civil lawsuits.[9] Prisoners must pay the filing

---

[5] Docket 12-1 (stating that the SAC contains "a valid eighth amendment violation under conditions of confinement and ADA/failure to accommodate").

[6] *See* L. Civ. R. 15.1(a) (providing that an "amended pleading must not incorporate by reference any prior pleading, including exhibits"); *see also Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("It is well-established that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' ") (citations omitted).

[7] Local Civil Rule 3.1.

[8] Local Civil Rule 3.1(c)(3).

[9] 28 U.S.C. § 1915(a)-(b).

fee incrementally until paid in full, regardless of the outcome of the action.[10] Should Plaintiff proceed with this lawsuit, the Court will issue a separate order to collect the $350 filing fee from Plaintiff's prisoner trust account.

Plaintiff's motion to waive prepayment of the filing fee at **Docket 2 is DENIED** because he did not complete or sign the authorization section on form PS10, and it does not include a copy the prisoner trust account statement for the past six months. On or before the date an amended complaint is filed, Plaintiff must also file a fully completed and signed Prisoner Application to Waive Prepayment of the Filing Fee on District of Alaska Form PS10 and attach a copy of the statement for the last six months of Plaintiff's prisoner trust account. Alternatively, Plaintiff may pay the $350 filing fee and the $55 administrative fee, a total of $405, at this time.

## II. Screening Requirement

Under the Prison Litigation Reform Act, a federal district court must screen complaints brought by prisoners seeking to proceed without prepaying the filing fee.[11] In this screening, a district court shall dismiss the complaint at any time if the court determines that the complaint:

> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or

---

[10] 28 U.S.C. § 1915(b)(1)&(2).

[11] 28 U.S.C. §§ 1915, 1915A.

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 3 of 24

(iii)    seeks monetary relief against a defendant who is immune from such relief.[12]

In conducting its screening review, a district court must accept as true the allegations of the complaint, construe the complaint in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.[13]  However, a court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.[14] Although generally, the scope of review is limited to the contents of the complaint, a court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.[15] Such documents that contradict the allegations of a complaint may fatally undermine the complaint's allegations.[16]

Before a court may dismiss any portion of a complaint, a court must provide a self-represented plaintiff with a statement of the deficiencies in the complaint and an opportunity to file an amended complaint, unless to do so would be futile.[17]

---

[12] 28 U.S.C. § 1915(e)(2)(B).

[13] *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).

[14] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (2001).

[15] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

[16] *Sprewell,* 266 F.3d at 988 (noting that a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims").

[17] *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) ("Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors.").

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 4 of 24
Case 3:25-cv-00370-SLG     Document 13     Filed 04/23/26     Page 4 of 24

Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[18]

### III. Requirements to State a Claim

Rule 8 of the Federal Rules of Civil Procedure instructs that a complaint must contain a "short and plain statement of the claim showing that the [complainant] is entitled to relief[.]"[19] Additionally, Rule 10 of the Federal Rules of Civil Procedure requires that a complaint must allege in specific terms how each named defendant caused a specific harm to a plaintiff.[20] While a complaint need not, and should not, contain every factual detail, "unadorned, the defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim.[21]

Further, multiple defendants may be joined in a single action only when the claims asserted against each of the defendants all arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."[22] Unrelated claims against different defendants must be filed in separate lawsuits.

---

[18] *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted).

[19] Fed. R. Civ. P. 8(a)(2).

[20] Docket 10 at 7.

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[22] Fed. R. Civ. P. 20(a)(2).

### IV. Screening review of Plaintiff's claims

Plaintiff's claims relate to events that allegedly occurred while he was serving a sentence in the custody of the Alaska Department of Corrections ("DOC"). Although Plaintiff separated his claims into ten claim sections, as guided by the Court's template complaint form, the SAC includes lengthy narratives and describes alleged events occurring over several months, including events that occurred after this case was filed. For relief, Plaintiff seeks $1,500,000.00 in damages and injunctive relief.

Liberally construed, Plaintiff's SAC alleges concerns regarding his mental health treatment and the conditions under which he was placed on a suicide protocol for several days beginning on or about January 9, 2026.

In Plaintiff's motion seeking leave to file an amended complaint, he states that he amended his complaint to add "color of law" language and to include his grievance. It is true that a defendant in a civil rights claims brough under 42 U.S.C. § 1983 ("Section 1983") must be acting under color of state law. But this case cannot proceed with the SAC because the SAC fails to state a viable claim for relief as to each of the 10 named Defendants in the SAC.

### A. Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized

standards, humanity, and decency.' "[23] The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."[24] Claims alleging inadequate mental health care and inhumane conditions on suicide watch fall under Eighth Amendment protections against cruel and unusual punishment. Although these are distinct types of claims, they may be pursued in a single action when they arise from the same or closely related factual circumstances.[25]

### 1. Inadequate Medical Care

To state a plausible inadequate medical or mental health care claim under the Eighth Amendment, a plaintiff must plead sufficient facts that, if accepted as true, support each of the following elements:

(1) the plaintiff faced a serious medical need;

(2) the defendant was deliberately indifferent to that serious

medical need: that is, the defendant knew of the plaintiff's

---

[23] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[24] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[25] *See, e.g. Coleman v. Brown,* 28 F.Supp.3d 1068 (2014) (addressing systemic deficiencies in mental health care delivery and inadequate implementation of suicide prevention programs within the same case).

serious medical need and disregarded it by failing to take

reasonable measures to address it; and

(3)     the defendant's act or failure to act caused harm to the

plaintiff.[26]

The Eighth Amendment does "not require the highest quality of health care [or] the community standard of health care."[27] Rather, a prisoner must show that "the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health."[28] Placing prisoners with serious mental illness in administrative segregation for an extended period of time without appropriate mental health care can constitute deliberate indifference and violate constitutional protections.[29] However, Plaintiff has not sufficiently alleged that any named defendant "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety."[30] "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how

---

[26] *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 9.31 and the cases cited therein.

[27] *Jensen v. Shinn,* 609 F. Supp. 3d 789, 796 (D. Ariz. 2022).

[28] *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (alterations and citation omitted).

[29] *Armstrong v. Brown,* 103 F.Supp.3d 1070 (N.D. Cal. 2015).

[30] *Farmer,* 511 U.S. at 837.

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 8 of 24

severe the risk."[31] This "subjective approach" focuses only "on what a defendant's mental attitude actually was."[32]

Although amendment may well be futile, Plaintiff is accorded leave to amend this claim. In an amended complaint, Plaintiff must allege specific facts as to each defendant explaining how that particular defendant knew of Plaintiff's mental health needs and consciously disregarded a substantial risk of harm to him, and what was the resultant injury or substantial risk of injury that Plaintiff suffered as a result of that Defendant's conduct. Plaintiff should state when, how, and where each Defendant he is asserting violated his right to medical care did so.[33]

### 2.     Conditions of Confinement

To state a plausible conditions of confinement claim under the Eighth Amendment, a plaintiff must plead sufficient facts that, if accepted as true, support each of the following elements:

(1)    the plaintiff faced a substantial risk of serious harm;

(2)    the defendant was deliberately indifferent to that risk: that is, the defendant knew of the plaintiff's serious risk of harm and disregarded it by failing to take reasonable measures to address it; and

---

[31] *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1188 (9th Cir. 2002).

[32] *Farmer*, 511 U.S. at 839.

[33] *Hill v. Rhude,* 556 F. Supp. 3d 1144, 1152–53 (D. Nev. 2021).

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 9 of 24
Case 3:25-cv-00370-SLG     Document 13     Filed 04/23/26     Page 9 of 24

(3)    the defendant's act or failure to act caused harm to the

plaintiff.[34]

"The Constitution 'does not mandate comfortable prisons,'"[35] and "conditions of confinement may be, and often are, restrictive and harsh[.]"[36] Conditions must be evaluated to determine whether they are inhumane, deprive inmates of basic human needs, or fail to furnish minimal civilized measures.[37] Courts must analyze each condition to determine whether that specific condition, and the amount of time the prisoner was subjected to it, posed a substantial risk of serious harm.[38]

A court must account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."[39] Courts have found that not all harsh conditions on suicide

---

[34] *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 9.31 and the cases cited therein.

[35] *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)),

[36] *Morgan v. Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006).

[37] *Madrid v. Gomez,* 889 F. Supp. 1146 (N.D. Cal 1995).

[38] *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue'[71] might be tolerable for a few days and intolerably cruel for weeks or months."). *Cf. Chappell v. Mandeville*, 706 F.3d 1052, 1057–58 (9th Cir. 2013) (granting qualified immunity where there was a legitimate penological purpose for constant illumination).

[39] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540) (1979)).

watch rise to constitutional violations, particularly when officials are responding to legitimate suicide risks.[40]

Plaintiff claims that while he was on suicide protocol from January 9 to 12, 2026, his personal property was not available to him, and that despite the freezing temperatures, he was given only a safety smock to wear and was only given bedding from 10pm until breakfast.[41] Plaintiff also alleges that the cell was constantly illuminated, had improper ventilation, that there was no place to eat, that he was not allowed out of the cell for exercise, that he was not allowed telephone calls, and that the only time he was allowed to shower was after he was sprayed with OC.[42] Plaintiff asserts that these conditions aggravated his mental health conditions and violated his constitutional rights. Plaintiff, however, also states that he was then actively suicidal and that he "wrapped a suicide smock around [his] throat at least three times and banged [his] head on the window and walls."[43]

Plaintiff has not sufficiently alleged that each named Defendant lacked a

---

[40] *Anderson v. County of Kern,* 45 F.3d 1310 (9th Cir.1995) (affirming a district court decision not to enjoin county the County of Kern from ever using a padded cell, called a safety cell, to temporarily confine violent or suicidal prisoners so they could not hurt themselves).

[41] Docket 12-2 at 13.

[42] Docket 12-2 at 5.

[43] Docket 12-2 at 4.

legitimate penological basis for placing Plaintiff on suicide protocol,[44] or that any named defendant "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety."[45] Although amendment of this claim may well be futile, Plaintiff is accorded leave to amend his claims regarding conditions while on suicide protocol in January 2026. However, unrelated claims must be brought separately in a new case.

### B.    Reasonable Accommodations for Disability

Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") prohibit disability discrimination in correctional settings.[46] "Although there are some differences for when the two statutes apply, the elements for establishing liability are essentially the same: plaintiffs asserting claims must show (1) that they are disabled[47] and (2) otherwise qualified, as defined by the relevant statute, and (3) were excluded from participation in or denied the benefits of a service, program, or activity, or otherwise discriminated

---

[44] *Anderson v. County of Kern,* 45 F.3d 1310, 1315 (9th Cir.1995) ("Prison officials are not culpable when they temporarily put an inmate who imminently threatens or attempts suicide in a place where he cannot hurt himself.").

[45] *Farmer,* 511 U.S. at 837.

[46] *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998); *Armstrong v. Wilson,* 124 F.3d 1019, 1022 (9th Cir. 1997). *See also Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999) ("Congress has instructed that the ADA is to be interpreted consistently with the Rehabilitation Act.").

[47] The ADA defines disability as a mental or physical impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. § 12102(1)(A).

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 12 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 12 of 24

against (4) because of their disability."[48]

Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the requested modifications would fundamentally alter the nature of the service, program, or activity, or would result in undue financial and administrative burdens.[49] Federal law does not require an accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation.[50] The issue of reasonableness depends on the individual circumstances of each case and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the requested accommodations.[51]

Neither the ADA nor Section 504 provides a cause of action for inadequate medical or mental health care.[52] Rather, a plaintiff must identify a specific denial of

---

[48] *Cooper v. Whatcom Cnty.,* 650 F. Supp. 3d 1144, 1177–78 (W.D. Wash. 2023) (citing *Duffy v. Riveland,* 98 F.3d 447, 455 (9th Cir. 1996)).

[49] 28 C.F.R. §§ 35.130(b)(7), 35.150.

*See also Armstrong v. Brown*, 732 F.3d 955, 957 (9th Cir. 2013) (recognizing that accommodations under ADA include "accessible beds" for prison inmates).

[50] *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *see also Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("As the regulatory language makes clear, entities are required only to make reasonable changes in existing policies in order to accommodate individuals' disabilities.").

[51] *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) ("The determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." (cleaned up)).

[52] *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021 (9th Cir. 2010) (holding that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 13 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 13 of 24

access to services or programs because of disability. To recover monetary damages under Title II of the ADA or Section 504, a plaintiff must prove intentional discrimination on the part of the defendant.[53] The Ninth Circuit applies a deliberate indifference standard to determine intentional discrimination.[54] Deliberate indifference has two elements: "[1] knowledge that a harm to a federally protected right is substantially likely, and [2] a failure to act upon that likelihood."[55]

Even though suicidal ideation may be a symptom of a mental health disability, it appears that Plaintiff was placed in isolation in an attempt to protect him from self-harm, not solely because of his disability. And although Plaintiff was unable to access programs and services while he was on suicide protocol, a short-term lack of access cannot give rise to a disability discrimination claim.[56]

Further, to the extent Plaintiff claims he was denied reasonable accommodation, his allegations are insufficient to state a disability claim. According to the included records, DOC responded to Plaintiff's accommodations request stating he had an upcoming appointment with mental health staff to

---

disability"), *overruled in part on other grounds by Castro v. County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016).

[53] *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001).

[54] *Id.*

[55] *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016).

[56] *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d at 1021–22 (finding that the denial of a prisoner's recreation time was not a result of his depression "but due to a jail policy restricting the activities of inmates on suicide watch").

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 14 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 14 of 24

discuss his medications, and that "[m]ental Health Staff are already working on getting him a job in Lima Module and are working on ordering workbooks to help him."[57] DOC also responded that a "service animal is not a reasonable request in a correctional setting."[58]

Plaintiff has not pleaded sufficient facts to demonstrate that any Defendant intentionally discriminated against Plaintiff because of his disability or was deliberately indifferent to that disability. Although amendment of this claim may well be futile, Plaintiff is accorded leave to amend this claim in which he identifies when, who, and how DOC officials were deliberately indifferent to Plaintiff's disability.

### V.    Filing an Amended Complaint

Plaintiff will be given the opportunity to file an amended complaint that addresses the deficiencies identified in this order.  When an amended complaint is filed, the Court treats all previous complaints as non-existent, so Plaintiff must not incorporate by reference any prior pleading, including exhibits in an amended complaint. Unrelated claims involving different defendants must be brought in separate lawsuits. An amended complaint must contain separately numbered, clearly identified allegations. If handwritten, it must be legible. Rule 11 of the Federal Rules of Civil Procedure requires that a complaint must be signed by a

---

[57] Docket 8-3 at 19.

[58] Docket 8-3 at 22.

Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 15 of 24

self-represented litigant, but there is no requirement to notarize a complaint or to attach an affidavit to a complaint.

The amended complaint should identify, as to each defendant, the specific injury that the plaintiff is alleging was caused by that defendant, when that injury occurred, and where that injury occurred. In addition, the allegations of the amended complaint must be set forth in sequentially numbered short paragraphs, with no paragraph number being repeated anywhere in the amended complaint. Rule 10(b) of the Federal Rules of Civil Procedure requires that "[a] party must state its claims or defenses as numbered paragraphs, each limited as far as practicable to a single set of circumstances." If Plaintiff chooses to attach DOC records or other documents to support his allegations, all his information must be included in the amended complaint itself, and he must specifically identify in the amended complaint the page number of the document that supports each of his contentions.

Plaintiff must not allege any new causes of action or add any additional defendants in the Third Amended Complaint. Plaintiff must not bring new claims based on events that have taken place since the SAC was filed.

If Plaintiff files an amended complaint, the Court will screen the amended complaint to determine whether it is subject to dismissal or whether that complaint may proceed to the next stage of litigation. Should the amended complaint proceed beyond the screening stage, the Court will order service of that complaint on

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 16 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 16 of 24

Defendant(s). Plaintiff must not attempt to serve any Defendant until the Court so orders.

## VI. The Three Strikes Rule

The Prison Litigation Reform Act requires that a self-represented prisoner receive a "strike" when a case he has filed in federal court is dismissed "as frivolous or malicious or fails to state a claim upon which relief may be granted[.]"[59] The "three strikes" provision was "designed to filter out the bad claims and facilitate consideration of the good."[60] When a prisoner-plaintiff has accumulated three strikes, he is prohibited from bringing any other civil rights cases in federal court without prepaying the full filing fee unless he makes "plausible allegations" that, at the time he filed the complaint, "the prisoner is under imminent danger of serious physical injury."[61] Imminent danger requires an allegation that a harm is "ready to take place" or "hanging threateningly over one's head."[62] It cannot be triggered solely by complaints of past injury or generalized fears of possible future harm.[63] In

---

[59] 28 U.S.C. § 1915(g).

[60] *Jones v. Bock,* 549 U.S. 199, 204 (2007).

[61] 28 U.S.C. § 1915(g); *see also Andrews v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir. 2007).

[62] *Andrews,* 493 F.3d at 1056 (cleaned up).

[63] *Id.* at 1053 ("The exception's use of the present tense, combined with its concern only with the initial act of 'bring[ing]' the lawsuit, indicates to us that the exception applies if the danger existed at the time the prisoner filed the complaint.").

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 17 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 17 of 24

addition to being "imminent," the alleged danger must also be "both fairly traceable to unlawful conduct alleged in [the] complaint and redressable by the court."[64]

## VII.        Plaintiff's motions

Pending before the Court are multiple motions filed by Plaintiff, including motions to amend, a motion for court appointed counsel, and two motions for preliminary injunctive relief. Because the Court granted Plaintiff's motion to file a SAC, Plaintiff's earlier motion to file a First Amended Complaint at Docket 8 is DENIED as moot. The Court now addresses Plaintiff's remaining motions. Although Plaintiff is granted leave to file an amended complaint in this case, he is cautioned against filing unnecessary or excessive motions with the Court.

### A. Motion for Counsel

At Docket 3, Plaintiff filed a motion for court appointed counsel. There is no constitutional right to appointed counsel in a civil action.[65] A federal court "may request an attorney to represent any person unable to afford counsel."[66] However, a district court's decision to request counsel for a self-represented litigant in a civil action is discretionary and granted only in exceptional circumstances.[67] When determining whether "exceptional circumstances" exist, a court must consider the

---

[64] *Ray v. Lara,* 31 F.4th 692, 701 (9th Cir. 2022) (adopting nexus test).

[65] *See Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases."); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) ("Generally, a person has no right to counsel in civil actions.").

[66] 28 U.S.C. § 1915(e)(1).

[67] *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1980).

plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims in light of the complexity of the legal issues involved.[68] The Court finds that, on the current record, Plaintiff has not demonstrated a likelihood of success on the merits. Additionally, it appears that Plaintiff is able to adequately articulate his claims, even if those claims may not be viable causes of action under the Eighth Amendment or the ADA. Further, although Section 1915(e)(1) permits a court to request a volunteer attorney, this Court currently has no list of volunteer attorneys from which it may request counsel to represent Plaintiff. For these reasons, Plaintiff's motion for court-appointed counsel at Docket 3 is DENIED without prejudice. If a volunteer attorney comes forward to accept this case, the Court may appoint counsel at that time.

### B.    Plaintiff's Motions for Preliminary Injunctive Relief

At Dockets 4 and 9, Plaintiff filed motions for preliminary injunctive relief seeking specific mental health medication and treatment, a service dog, and a prison job assignment.[69] In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

---

[68] *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.1986) (quoting *Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir. 1983)).

[69] *See* Dockets 4, 4-1.

of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[70] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[71]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as part of the four-element *Winter* test."[72] Under that approach, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[73] Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits."[74] All four *Winter* elements must still be satisfied under this approach.[75]

---

[70] 555 U.S. 7, 20 (2008).

[71] *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[72] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

[73] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[74] *Id.* (internal quotation marks omitted) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)).

[75] *See All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also, Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 20 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 20 of 24

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[76] Additionally, the Prison Litigation Reform Act ("PLRA") imposes strict limitations on the scope of remedies available in cases involving prison conditions. Specifically, injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.[77]

Here, the SAC is being dismissed for failure to state a claim, so Plaintiff has not established a likelihood of success on the merits. Further, Plaintiff has not demonstrated that he is likely to suffer immediate and irreparable harm in the absence of the preliminary injunctive relief he seeks. Therefore, the motions at Dockets 4 and 9 are DENIED.

**IT IS THEREFORE ORDERED:**

1.      Plaintiff's Second Amended Complaint at **Docket 12-2 is DISMISSED for failure to state a plausible claim.**

2.      Plaintiff is accorded 60 days from the date of this order to file either:

a. Third Amended Complaint, in which Plaintiff revises his SAC to address the deficiencies identified in this order. An amended

---

injunction).

[76] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

[77] 18 U.S.C. § 3626.

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 21 of 24
Case 3:25-cv-00370-SLG     Document 13     Filed 04/23/26     Page 21 of 24

complaint should be on the Court's form, which is being provided to Plaintiff with this order; OR

b. <u>Notice of Voluntary Dismissal</u>, in which Plaintiff elects to close and end this case.

3. If Plaintiff does not file either a Third Amended Complaint or Notice of Voluntary Dismissal **within 60 days** from the date of this order, this case shall be dismissed as a "strike" without further notice to Plaintiff for failure to state a claim.

4. Plaintiff's application to waive prepayment of the filing fee at **Docket 2** is incomplete and is therefore **DENIED.**

5. Should Plaintiff elect to proceed with this case, he must either pay the $350 filing fee and $55 administrative fee, a total of $405.00, or file a completed and signed prisoner application to waive payment of the filing fee on Form PS10 **on or before the date the Third Amended Complaint is filed**. The application must include an attached statement from Plaintiff's prison trust account for the six months preceding the filing of the application.

6. Federal law only allows the Court to waive a prisoner's *prepayment* of the filing fee. Prisoners must pay the $350 filing fee incrementally until paid in full, regardless of the outcome of the action.[78] Should Plaintiff proceed with this lawsuit,

---

[78] 28 U.S.C. § 1915(b)(1)&(2).

Case No. 3:25-cv-00370-SLG, *Marquez v. Sherman, et al.*
Screening Order
Page 22 of 24
Case 3:25-cv-00370-SLG    Document 13    Filed 04/23/26    Page 22 of 24

the Court will issue a separate order for the collection of the $350 filing fee directly from Plaintiff's prisoner trust account.

7.      If Plaintiff is released from custody while this case remains pending and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) pay the unpaid balance of the filing fee and the administrative fee, a total of $405, or (2) file a Non-Prisoner Application to Waive the Filing Fee (Form PS11).[79]  Failure to comply may result in dismissal of this action.

8.      Plaintiff's motion for court appointed counsel at **Docket 3 is DENIED.**

9.      Plaintiff's motions for a preliminary injunction at **Dockets 4 and 9 are DENIED.**

10.     Plaintiff's motion at **Docket 12 is GRANTED to the extent the SAC was accepted and screened in this order.**

11.     Plaintiff's motion to file a First Amended Complaint at **Docket 8 is DENIED as moot.**

12.     With this order, the Clerk is directed to send to Plaintiff: (1) form PS01, with "THIRD AMENDED" written above the title "Prisoner's Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS10, Prisoner's Application to Waive Prepayment of the Filing Fee; (3) form PS09, Notice of Voluntary Dismissal; and (4) form PS23, Notice of Change of Address.

---

[79]  The Court's template forms are available upon request from the Clerk's office and on the Court's website at https://www.akd.uscourts.gov/forms.

DATED this 23rd day of April, 2026, at Anchorage, Alaska.

/s/ Sharon L. Gleason
SHARON L. GLEASON
UNITED STATES DISTRICT JUDGE